# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| | ) | |
| v. | ) | 1:21-cr-00693-TFH |
| | ) | |
| MARK KULAS, JR. | ) | VIOLATION |
| | ) | |
| Defendant. | ) | 40 U.S.C. § 5104(e)(2)(G) |
| | ) | Parading, Demonstrating, or |
| | ) | Picketing in a Capitol Building) |

## DEFENDANT MARK KULAS, JR.'S REDACTED SENTENCING MEMORANDUM

Rachel M. Cannon
STEPTOE & JOHNSON LLP
227 W. Monroe Street, Suite 4700
Chicago, IL 60606
(212) 577-1270
rcannon@steptoe.com

Brian M. Heberlig
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
bheberlig@steptoe.com

*Counsel for Mark Kulas, Jr.*

Dated: April 19, 2022

# TABLE OF CONTENTS

I.    Introduction ................................................................................................. 1

II.   Mark Kulas, Jr.'s Personal History And Characteristics ........................... 3

    A.   Childhood: ███████████████████████████████████ 3

    B.   High School: ████████████████████████████████
████████████████████████████████████████████ 4

    C.   College: █████████████████████████████████████
████████████████ ............................................................... 4

    D.   ████████████████████████████████████████████████
████████████████████████████ ...................... 5

    E.   ████████████████████████████████████████ ... 6

    F.   Mark Works to Support Himself ████████████████████ ..... 7

    G.   Mark Attends President Trump's January 6, 2021 Rally at the Ellipse ........................... 7

    H.   Mark's Family and Family Business Receive Numerous Threats and Hate Mail Following the Events of January 6, 2021 ................................ 8

III.  The Charged Conduct ................................................................................. 10

IV.   In Light Of Mark's ████████████████████████ A Sentence Of 6 Months' Probation Plus Community Service Is Warranted ................... 11

    A.   The Probation Department Recommends Six Months' Probation .................... 12

    B.   Mark's History and Characteristics ................................ 13

    C.   The Nature and Circumstances of the Offense ................... 14

    D.   Protection of the Public ................................................ 15

    E.   Seriousness of the Offense and Deterrence ..................... 15

    F.   The Need to Avoid Unwanted Sentencing Disparities ........ 16

    G.   Neither Prison Nor a Lengthy Probation Term Are Appropriate For Someone ████ ████████████████████████████ ............... 16

V.    Conclusion .................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Gall v. United States,*
    552 U.S. 38 (2007)...................................................................................................18

*Pepper v. United States,*
    562 U.S. 476 (2011)................................................................................................11

*United States v. Cunningham,*
    429 F.3d 673 (7th Cir. 2005) ..................................................................................12

*United States v. Dokmeci,*
    No. 13-CR-00455 (JG), 2016 WL 915185 (E.D.N.Y. Mar. 9, 2016).....................17

*United States v. Miranda,*
    505 F.3d 785 (7th Cir. 2007) ..................................................................................12

*United States v. Nesbeth,*
    188 F. Supp. 3d 179 (E.D.N.Y. 2016) ...................................................................15

**Statutes**

18 U.S.C. § 17.....................................................................................................................12

18 U.S.C. § 19.....................................................................................................................12

18 U.S.C. § 3551(b).............................................................................................................12

18 U.S.C. § 3553(a)....................................................................................................2, 11, 12

18 U.S.C. § 3553(a)(1)...................................................................................................13, 14

18 U.S.C. § 3553(a)(2)(A)-(B)............................................................................................15

18 U.S.C. § 3553(a)(2)(C)...................................................................................................14

18 U.S.C. § 3553(a)(6).........................................................................................................15

18 U.S.C. § 3553(a)'s...........................................................................................................11

18 U.S.C. § 3561(a)(3).........................................................................................................12

40 U.S.C. §§ 5104(e)(2)(G) and 5109(b)............................................................................11

**United States Sentencing Guidelines**

U.S.S.G. § 5K2.13, n.1 ..................................................................................................12

U.S.S.G. § 5K2.20 ........................................................................................................14

U.S.S.G. §5k2.20, n. 3 ..................................................................................................14

I.    **Introduction**

Mark Kulas Jr. is a gentle ██████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

Mark feels deep remorse and shame over his participation in the January 6, 2021 events that took place at the U.S. Capitol.  He has pled guilty and accepted responsibility for his conduct. He has already paid the restitution that he owes. Because of his and his brother's parading in the

Capitol, Mark and his family have received vicious hate mail and threats, have witnessed their images repeatedly plastered across TV, print, and international media outlets, and have lost their privacy to drones flying over their home and reporters with camera crews knocking on their door. Mark's family's cleaning business has also been damaged by his participation in the January 6th events. Not only have customers left the company, but also employees who report they cannot deal with the hateful calls and emails they receive while working there.

Mark does not fall within the heartland of January 6, 2021 cases ████████████████

████████████████████ Counsel is not aware of any other January 6 defendants who ████████



---

[1] We are disappointed to report to the Court that DOJ supervisors overseeing this case refused to meet with undersigned counsel (even in a phone call) to discuss ████████████████ ████████████████████████████████ This is not typical for DOJ. DOJ supervisors reported there were too many January 6 cases pending to meet with individual defense counsel, which we found deeply troubling.

███████████████████████████████████████████████████████

████████

Instead, consistent with what the Probation Department has recommended, we are respectfully requesting a sentence of six months' probation for Mark, along with community service plus $500 in restitution, which he has already paid. *See* Ex. A. This sentence is sufficient, but not greater than necessary, to punish Mark for his mistake on January 6, and deter other similarly-situated ████████ defendants from committing similar crimes in the future. 18 U.S.C. § 3553(a).

## II.   <u>Mark Kulas, Jr.'s Personal History And Characteristics</u>

Mark has spent his entire life ███████████████████████████████████
████████████████████████████████████████████████████████

████████████████

### A.   Childhood: ████████████████████████████████████

Mark was born twenty-eight years ago in the northern suburbs of Chicago to loving and devoted parents. ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████   ████████████

─────────────────────────

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

**B.**    **High School:** ███████████████████████████
███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**C.**    **College:** ████████████████████████████████
███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**D.**







███████ ███ ████ █████ ████ ██ ████ █████ ██ █
████████

**F.      Mark Works to Support Himself Notwithstanding** ██████████
████

Since graduating from Trinity University in 2017, Mark has diligently worked to support himself ██████████. PSR at 9. After leaving college he worked as a food runner at a well-known restaurant in Chicago, Spiaggia, where he developed an interest in wine. *Id*. On his own initiative, Mark obtained a sommelier certification from a culinary school in Chicago. *Id.*; Ex H at MKULAS0000199. He had hoped to become a professional sommelier, but when the pandemic hit, Spiaggia closed. Miriam Di Nunzio, *Spiaggia closes permanently after nearly 40 years as one of Chicago's top Italian restaurants*, CHICAGO SUN TIMES (July 9, 2021 https://chicago.suntimes.com/2021/7/9/22570816/spiaggia-closes-permanently-one-of-chicagos-top-italian-restaurantscafe-spiaggia-tony-mantuano). He then pivoted to working full time at his family's cleaning business, where he is employed now. PSR 9.

Mark's persistent efforts at self-improvement are admirable. ██████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

**G.      Mark Attends President Trump's January 6, 2021 Rally at the Ellipse**

In early 2021, Mark decided to travel with his brother Christian to Washington, D.C. to attend President Trump's January 6 speech on the Ellipse. The two did not plan to enter the Capitol, but merely listen to the President's final speech. Regrettably, Mark and Christian ultimately succumbed to the mob atmosphere on the Ellipse, where people were screaming, chanting, and

moving *en masse* towards the Capitol. Instead of leaving the rally and returning to their hotel, Mark and Christian made the poor decision to walk with the crowd of thousands to the Capitol and parade inside for 24 minutes. ECF No. 10. They did not harm anyone, or break anything, and quickly left.[4] The two flew back to Chicago the next day.

### H.    Mark's Family and Family Business Receive Numerous Threats and Hate Mail Following the Events of January 6, 2021

Once Mark and his brother Christian were identified as participating in the events of January 6, 2021, Mark and his family, as well as their cleaning business, became the object of vile threats, hate mail, and vicious attacks over social media. At one point the family contacted their local police department for assistance, as people began sending hate mail to their home address, which was extensively publicized in the media following Christian's arrest.[5]

For example, one Instagram user stated about Christian's mother, "With a mom named 'Yoanna Kulas' [] Wonder if his Czech grandparents were Nazi collaborators? Is he keeping up with the family tradition?" Ex. I at MKULAS0000200. In fact, Mrs. Kulas' family were members of the Polish resistance in World War II, and Mrs. Kulas' aunt was imprisoned in two concentration camps—Ravensbruck and Buchenwald. Ex. K at MKULAS_INT0000106-233. She was experimented on by the Nazis following her capture, and their torture resulted in Mrs. Kulas' aunt losing all of her reproductive organs. *Id.*

---

[4] We understand the Government plans to argue that Christian and Mark returned to the Capitol after they initially left. However, *the two returned for a total of approximately 45 seconds* so that Christian could ask for directions back to their hotel.

[5] Mark's family also had to endure media drones flying over their home, and numerous reporters with an entourage of cameras repeatedly knocking on their front door. *E.g.*, Charlie DeMar, *Christian Kulas Of North Suburban Kenilworth Charged In Jan. 6 Capitol Insurrection*, CBS Chicago (June 8, 2021 https://www.cbsnews.com/chicago/news/christian-kulas-kenilworth-january-6-capitol-insurrection/). Mark's family and this case have even received extensive media coverage in Poland, where his grandmother and other relatives still live. Ex. J at MKULAS0000225 -27.

Another Instagram user posted about Christian's mother, "American people should show up to his mommy's house with a gallow and raid mommas house[.]" Ex. I at MKULAS000201. Another posted that Christian's mother is a "white supremacist bitch!!!" Ex. I at MKULAS0000353

The Kulas family's cleaning business has also received numerous hateful emails and letters. For example, one individual sent the Kulas family business an email entitled, "Make Sure They Take Plenty of Lube," and attached a news article discussing the Kulas brothers' guilty pleas. Ex. I at MKULAS0000352. The email said, "Hope they're both sentenced to time in the slammer – and get their assholes stretched to the limit while they're there." *Id*. These disgusting posts and emails are just a handful of *dozens* that Mark's family has received over the past year.

The hatred and vitriol Mark's family has had to endure is wholly undeserved. Mark Kulas Sr. and Yoanna Kulas are both Polish immigrants who each fled Poland's repressive Communist government in the 1980s and 1990s. Ex. M. Mark Kulas Sr. fled after being tortured in college because he was part of a pro-democracy student group that had organized a protest against the Communist government. *Id*. He and his family escaped from Poland by receiving permission to attend Father Maximilian Kolbe's 1982 beatification in Rome. *Id*. From there, the family made their way through several European countries, and ultimately to the United States. *Id*. They had to leave their belongings behind in Poland, and were not able to return for over a decade lest they be arrested. *Id*.

Upon arriving in America, Mark Jr.'s grandfather started a cleaning company on Chicago's north shore, which Mark Jr.'s father now runs today with his brother, Mark Jr.'s uncle.  KULAS MAIDS (last visited April 15, 2022 https://kulasmaids.com/). The Kulas family has grown the business from nothing through seven-day work weeks and back-breaking labor. The company provides jobs to many local women, most of whom are Ukrainian and Hispanic immigrants.

Mr. and Mrs. Kulas love this country and everything it has done for them. Ex. M. They are the furthest thing from white supremacists. They love their sons, and have supported them through all of their many ███████████████████████. *Id.* ██████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ Mark's parents do not deserve the barrage of disgusting and hateful threats, postings, letters, and email messages they have received in connection with this case, and they have been viciously and vicariously punished for the mistakes of their ██████████ sons.

## III.   **The Charged Conduct**

Mark takes full responsibility for his actions on January 6, 2021.  As discussed above and in Mark's plea agreement, Mark regrets entering the Capitol and walking inside for 24 minutes. He knows that what he did was wrong, and feels ashamed of his actions. Mark sincerely regrets the pain that he has caused others, especially his family.

Without meaning to minimize in any way Mark's actions or their wrongfulness, we hope the Court can understand Mark's susceptibility to following the crowd that day due to ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████ as Mark, he felt excitement and a sense of belonging as the cheering crowd of thousands began making its way toward the Capitol. It is easy to understand how Mark—albeit wrongly— simply followed along. *See, e.g.*, Ex. Q, Jenna Chang, *The Role of Anonymity in Deindividuated Behavior: A Comparison of Deindividuation Theory and the Social Identity Model of Deindividuation Effects (SIDE)*, 6 THE PULSE UNDERGRADUATE J. OF BAYLOR U. (Fall 2008) (collecting research analyzing that people are more likely to "act aggressively or deviate from

10

acceptable social behaviors when they are in group settings than when they are alone").

It is important to note that Mark's activities in the Capitol were non-violent. He did not harm anyone or anything on January 6.  He is not and has never been part of any white supremacist or extremist groups. Mark has no history of violence or rule-breaking. ██████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████

IV. **In Light Of Mark's** ██████████████████████████**, A Sentence Of 6 Months'**
**Probation Plus Community Service Is Warranted**

As set forth in 18 U.S.C. § 3553(a), the Court has wide discretion when sentencing a defendant to ensure that the punishment "fit[s] the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (internal citations and quotations omitted).  This Court should exercise that discretion here.

Factors the Court must consider when sentencing Mark include the nature and circumstances of the offense, and Mark's history and characteristics. 18 U.S.C. § 3553(a). The Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence. *Id*. The Court must also protect the public from further crimes of the defendant, and provide him with needed training, medical care, or other treatment in the most effective manner. *Id*. The Court must also consider the kinds of sentences available; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. Applying 18 U.S.C. § 3553(a)'s sentencing factors to Mark and the particular facts of his case, a sentence of 6 months' probation, plus community service and $500 restitution, which he has already paid, is just and fair.

A.       **The Probation Department Recommends Six Months' Probation**

As the PSR points out, Mark has pled guilty to a one-count Information which charges him

with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §§

5104(e)(2)(G) and 5109(b). PSR ¶ 4. This is a petty offense. *Id.* ¶ 68; 18 U.S.C. § 19. Thus, the

United States Sentencing Guidelines do not apply. PSR ¶ 66.

Probation has identified several factors that "warrant a downward departure," including

Mark's "continuous and positive employment history," "lack of criminal history," "the fact that

this offense is considered a 'petty' offense," and Mark's "minimal participation in the offense."

PSR ¶ 82. Probation has considered Mark's history ███████████████, and recommended a

sentence of six months' probation.[6] Sentencing Recommendation at 1 - 2. Mark appreciates and

agrees with Probation's recommendation for leniency, and believes that ████████████████

████████████████████. *See, e.g., United States v. Cunningham*, 429 F.3d 673,

678 (7th Cir. 2005) (vacating sentence and remanding for resentencing where court did not discuss

defendant's mitigating psychiatric problems raised under 18 U.S.C. § 3553(a)); *United States v.*

*Miranda*, 505 F.3d 785, 796 (7th Cir. 2007) (same, and noting that "the courts do not often

encounter a person who has a documented history of" rare mental health conditions "that predate

any criminal conduct").

---

[6] By contrast, the Government intends to recommend a sentence of two weeks' imprisonment, 36
months' probation, community service, and $500 restitution. This proposed sentence is far in
excess of what Mark needs or deserves, particularly given ████████████████████. It is
also an unlawful sentence: neither 18 U.S.C. § 3561(a)(3) nor 18 U.S.C. § 3551(b) authorize a
sentence of *both* imprisonment *and* probation for the same petty offense. *See* 18 U.S.C. §
3561(a)(3) ("(a) … [a] defendant who has been found guilty of an offense may be sentenced to a
term of probation unless …(3) the defendant is sentenced at the same time to a term of
imprisonment for the same or a different offense that is not a petty offense."). *See also* 18 U.S.C.
§ 3551(b) ("(b) … [a]n individual found guilty of an offense shall be sentenced, in accordance
with the provisions of 3553, to ---(1) a term of probation …; (2) a fine…; or (3) a term of
imprisonment …"). The latter statute further provides that a "sentence to pay a fine may be
imposed in addition to any other sentence," *id.*, in contrast to the other two types of sentences –
imprisonment and probation – which are mutually exclusive.



are important personal traits this Court must consider in evaluating his history and characteristics. They are also important factors the Court should consider in deciding (1) the kind of sentence necessary to protect the public or deter Mark from future crimes, and (2) whether Mark's proposed sentence will result in unwarranted sentencing disparities.

**B.     Mark's History and Characteristics**

Mark's "history and characteristics" support a six-month term of probation plus community service. 18 U.S.C. § 3553(a)(1). ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██ Mark has always been kind and sincere. His excellent character is reflected in the numerous letters that Mark received from people writing to the Court on his behalf.

For example, numerous co-workers and family friends describe Mark as kind and respectful. One colleague, who has worked with Mark for five years, stated that Mark is "hard working, compassionate, and kind." He "goes above and beyond to help all of his co-workers and has always treated everyone with respect." Ex L at MKULAS0000239. Another colleague explained that Mark is "one of the kindest people [she has] ever met[,] possessing one of the sweetest of souls and warmest of hearts." Ex L at MKULAS0000238. Another colleague describes

13

him as "dependable," "respectful," and "compassion[ate]." Ex L at MKULAS0000234. Another colleague describes him as "a quiet, polite, and gentle young man ... a true gentleman." Ex L at MKULAS0000235.  A family friend praised Mark's "work ethic especially since he lives with ███████████████." Ex L at MKULAS0000236-37. Another family friend describes Mark and his brother Christian as "two of the kindest boys I have ever met," elaborating that Mark is "shy and reserved and above all kind."  Ex L at CKULAS00001277.

We urge the Court to remember Mark's kindness, decency, and respectfulness when considering an appropriate sentence for him.

### C.      The Nature and Circumstances of the Offense

The "nature and circumstances of the offense" further support a sentence of six months' probation plus community service. 18 U.S.C. § 3553(a)(1). Mark entered the Capitol very briefly—24 minutes in total—and limited his conduct to walking through the building and observing.  ECF No. 10 at 4. He did not engage in violence towards any person or property. Were the U.S. Sentencing Guidelines applicable to this case, Mark's "Aberrant Behavior" would qualify for a downward departure under U.S.S.G. § 5K2.20 (authorizing a departure where defendant "committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."). Notably, this downward departure provision urges courts to consider, among other things, a defendant's "(A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense."  U.S.S.G. §5k2.20, n. 3.  All of these factors favor leniency for Mark.

14

### D.      Protection of the Public

Mark does not pose any danger to the public, rendering 18 U.S.C. § 3553(a)(2)(C) superfluous.  Mark has no criminal history, nor any academic or employment discipline. PSR at 7. He feels overwhelming shame at his involvement in this case, and is devastated to have caused his family so much pain. Such feelings would be difficult for any son to bear, ███████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Ex. B at

MKULAS0000010.  Mark wishes to accept his punishment and make amends with his community so that he can return to his quiet, simple life, and ███████████████████████████

███████████████

### E.      Seriousness of the Offense and Deterrence

A sentence of six months' probation plus community service will adequately reflect the seriousness of the offense and the need for deterrence, as required by 18 U.S.C. § 3553(a)(2)(A)-(B).  First, Mark has already been deterred from committing further crimes by the hateful media attention he has received, and the cruel insults and attacks that have been inflicted upon his loving family. Again, these consequences would be shame-inducing for anyone, but are particularly devastating for ██████████████████████████████████████████

██████████████████████████████████████████████ Ex. B at

MKULAS0000010. Second, Mark's conviction for parading in the Capitol is punishment in its own right.  He now faces the lifelong stigma of being associated with that dark date in our nation's history.  *See United States v. Nesbeth*, 188 F. Supp. 3d 179, 180 (E.D.N.Y. 2016) (urging sentencing courts to consider the collateral consequences of criminal convictions).

**F.      The Need to Avoid Unwanted Sentencing Disparities**

Sentencing Mark to six months' probation plus community service will not result in any unwarranted sentencing disparities proscribed by 18 U.S.C. § 3553(a)(6). First, Mark's unique ███████████████████████ take his case out of the heartland of January 6, 2021 prosecutions, and warrant a sentence that fits both his crime and his individual circumstances. Second, Mark does not need extensive Court supervision, given his lack of criminal history, lack of opportunity to commit any kind of similar crime ever again, and lack of bond violations. In addition, he is and plans to be employed, and to continue receiving ████████████████████. He will not be in Washington, D.C. for the next presidential election, and does not need to be monitored until then.

While several January 6, 2021 defendants have been sentenced to prison, home confinement, or lengthy terms of probation, many of those defendants have been more culpable than Mark because they committed acts of violence or property damage. Certainly, to our knowledge, none have the lengthy history of ██████████████████████ ████████████████ In short, Mark's circumstances are unique. Requiring him to receive a sentence identical to those of other January 6, 2021 defendants would not be just.

**G.      Neither Prison Nor a Lengthy Probation Term Are Appropriate For Someone with Mark's Unique █████████████**

For more than a decade, the U.S. Sentencing Commission, commentators, the Department of Justice, and the courts have recognized that alternatives to incarceration warrant greater consideration than they receive. As early as 2009, the Sentencing Commission issued a report on alternative sentencing which recognized that "[e]ffective alternative sanctions are important

options for federal, state, and local criminal justice systems.  For the appropriate offenders, alternatives to incarceration can provide a substitute for costly incarceration."[7]

Attorney General Eric Holder echoed these concerns in 2014: "We know that over-incarceration crushes opportunity. We know it prevents people, and entire communities, from getting on the right track. And we've seen that—as more and more government leaders have gradually come to recognize—at a fundamental level, it challenges our commitment to the cause of justice." DEP'T OF JUSTICE, ONE YEAR AFTER LAUNCHING KEY SENTENCING REFORMS, ATTORNEY GENERAL HOLDER ANNOUNCES FIRST DROP IN FEDERAL PRISON POPULATION IN MORE THAN THREE DECADES (Sept. 23, 2014), available at https://www.justice.gov/opa/pr/one-year-after-launching-key-setencing-reforms-attorney-general-holder-annouces-first-drop-0.  Likewise, in October 2014, then-Deputy Attorney General Sally Yates commented, "[w]hile it's true that there are dangerous defendants from whom society needs to be protected, there are others . . . for whom alternatives to incarceration make a lot more sense." *United States v. Dokmeci*, No. 13-CR-00455 (JG), 2016 WL 915185, at *10 (E.D.N.Y. Mar. 9, 2016).



---

U.S. SENTENCING COMMISSION, ALTERNATIVE SENTENCING IN THE FEDERAL CRIMINAL JUSTICE SYSTEM (January 2009), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/alternatives/20090206_Alternatives.pdf.



Ex. N. That report revealed, "the BOP cannot accurately determine the number of its inmates who have mental illness … *because institution staff do not always document inmates' mental disorders*. This could prevent BOP from ensuring that it is caring for all of these inmates appropriately." Ex. N at 34 (emphasis added). The report also revealed that the BOP is *affirmatively underreporting* the number of mentally ill inmates because it does not have the resources to care for them. *Id*. at 37-42. The report also described "the BOP's challenges in recruiting and retaining Psychiatrists." *Id*. at 45. ███████████████████

████████████████████████████████████████████████████████

██████████████████████████████ *See also* Ex. P, Christie Thompson and Taylor Elizabeth Eldridge, *Treatment Denied: The Mental Health Crisis in Federal Prisons*, THE MARSHALL PROJECT (Nov. 21, 2018), https://www.themarshallproject.org/2018/11/21/treatment-denied-the-mental-health-crisis-in-federal-prisons.

In short, for someone like Mark, ████████████████████████████ ████████████████████████████, neither prison nor a lengthy term of probation is necessary either to punish him, or to ensure his future behavior comports with the law. *Gall v. United States,* 552 U.S. 38, 48–49 (2007) (recognizing the punitive nature of probation). A term of six months' probation plus community service is sufficient.

## V.   <u>Conclusion</u>

Mark feels genuine remorse for his actions on January 6, 2021. He understands this Court will need to sentence him. He is respectfully requesting a sentence of six months' probation plus community service and $500 restitution (which he has already paid). This sentence is sufficient but not greater than necessary to allow Mark to continue to better himself through hard work and ████████████████████████, while also accepting responsibility for his mistake in judgment, one which all evidence suggests will never be repeated. The unique circumstances present here, including ████████████████████████████; his otherwise law-abiding life; and the vicious and wholly unwarranted attacks inflicted upon him and his loving family render this sentence appropriate.

Respectfully submitted,

/s/ Rachel M. Cannon
Rachel M. Cannon
STEPTOE & JOHNSON LLP
227 W. Monroe Street, Suite 4700
Chicago, IL 60606
(212) 577-1270
rcannon@steptoe.com

/s/  Brian M. Heberlig
Brian M. Heberlig
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
bheberlig@steptoe.com

*Counsel for Mark Kulas, Jr.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY the foregoing **DEFENDANT MARK KULAS, JR.'S SENTENCING MEMORANDUM** was served upon counsel of record automatically via CM/ECF this 19th day of April 2022.

*s/ Rachel M. Cannon*
Rachel M. Cannon
Steptoe & Johnson LLP